**Commonwealth v. Ferraro**

*Jeffrey P. Garton,* Assistant District Attorney, for Commonwealth.

*Edward Reif,* for defendant.

SATTERTHWAITE, J., September 12, 1974.—Defendant, having been found guilty upon trial by the court without a jury on charges of larceny of an automobile and related charges, has caused his motions for new trial and in arrest of judgment to be argued before the court en banc. While the filed motions were founded upon the stock reasons, including the alleged insufficiency of the evidence to convict, the only question argued and actually relied upon was the propriety of the court's refusal, after a pretrial hearing, to suppress certain physical evidence discovered and taken by the police from defendant's vehicle and person at the time of his arrest.

The subject of the larceny was a gold and yellow Cadillac automobile stolen from its parking place in

front of an apartment house on State Road in Bensalem Township, this county, near the Philadelphia city line, at about 1:15 a.m. on August 19, 1971. The owner of the Cadillac heard it being started up and driven away, and had immediately telephoned the Bensalem Township Police Department. The resulting radio alert was heard moments later by Officer Thompson, a Bensalem Township policeman on routine patrol on nearby Route 13. Due to road construction, Officer Thompson was required, in order to proceed to the State Road location, to cross the line into the City of Philadelphia on Route 13 (Frankford Avenue), turn left onto Grant Avenue, and left again on Torresdale Avenue which would have led him back to Bucks County and the State Road site a mile or so away. As he thus proceeded east on Grant Avenue at about 1:20 a.m., he observed the described Cadillac approaching from the opposite direction. He made a U-turn to follow it and found himself behind an intervening Lincoln automobile which was "tailgating" or following closely behind the Cadillac (within "maybe a half a car length") as it proceeded westerly on Grant Avenue at about 35 miles per hour, thus preventing Officer Thompson from observing the license tag on the Cadillac. Officer Thompson pulled up along side the Cadillac as it stopped at a traffic light at the Frankford Avenue intersection and arrested the operator, one Thomas DiCicco, Jr., on the stolen car complaint. He noticed that the lock cylinder on the left front door of the Cadillac had been removed, leaving an empty hole under the exterior door handle.

In the meantime, Officer Hughes, a Philadelphia policeman who was in a Philadelphia police car likewise on routine patrol, had observed the Bensalem police car travelling east on Grant Avenue and followed it. Upon noting Officer Thompson's U-turn,

Officer Hughes did likewise and pulled up behind Officer Thompson at the Frankford Avenue intersection and alongside the Lincoln vehicle which was being operated by Richard Ferraro, the within defendant, the Lincoln having also stopped behind the Cadillac at the traffic light. Officer Hughes had likewise observed the Lincoln "tailgaiting" the Cadillac as it travelled westerly on Grant Avenue "less than half a car's length" behind the Cadillac.

As the vehicles stopped at the traffic light, Officer Thompson called back to Officer Hughes that the Cadillac had been stolen and requested him to "cover" the Lincoln while he was securing the operator of the stolen vehicle. At Officer Hughes' direction with drawn service revolver, defendant Ferraro turned off the ignition and exited from the Lincoln. As he did so, Officer Hughes observed, as did Officer Thompson a few moments later after he had handcuffed and placed DiCicco in his police car, on the front seat of the Lincoln in open view a vise grip wrench and an open so-called "tote" bag from which were protruding a "bunch" of General Motors car key blanks on a ring. Upon being so alerted and their suspicions being aroused by all the circumstances, the officers investigated further, examining the "tote" bag and finding the contents to include additional car key blanks, a pair of cutting pliers, a key-making device, a tool fitting the rear of an ignition lock and a flashlight. Defendant was placed under arrest and, in the body search of his person incident thereto, two auto lock cylinders were found in his pocket.

We believe that the suppression judge correctly ruled that the physical items so discovered in the vehicle and on defendant's person and thereafter seized by the police were not subject to suppression and were properly received in evidence at defendant's

subsequent trial. While these articles were not taken pursuant to a search warrant, they were obtained under circumstances obviating the need therefor.

It is unquestionably true that, as a general rule, a search warrant issued upon a due showing of probable cause is necessary to justify an involuntary invasion of a subject's privacy by search and seizure of property. One of the established exceptions to such general rule, however, is the so-called "plain view" doctrine, which provides that contraband or other physical evidence in plain view of the investigating officer may be seized without a warrant: Commonwealth v. Clelland, 227 Pa. Superior Ct. 384 (1974). The application of this principle, of course, is conditioned on the premise that the officer's opportunity so to observe was not itself the product of illegal activity or position: Commonwealth v. Watkins, 217 Pa. Superior Ct. 332 (1970). The crucial question in the instant case, therefore, is whether the police had the right to be in the situation which enabled them in the first instance to see the subject tools and keys on the seat of the Lincoln automobile occupied and operated by the within defendant.

It is clear that they could not have constitutionally stopped the Lincoln as an isolated vehicle through the pretext of a routine check of credentials under The Vehicle Code without a showing of probable cause for belief that either the vehicle or the operator was involved in some violation of the law: Commonwealth v. Swanger, 453 Pa. 107 (1973). On the other hand, if there is probable cause for a reasonable conclusion from all the circumstances that the driver has committed a crime or that the vehicle contains contraband or evidence of crime, the exigency of the situation of an operable vehicle may justify a search and seizure of the contents thereof without a warrant (Chambers v. Maroney, 399 U. S. 42 (1970); Almeida-Sanchez v.

United States, 413 U. S. 266 (1973)); such exigent circumstances may be found where the probable cause arises (1) in an unforeseen way and shortly before the opportunity to search, and (2) at a time when the vehicle is mobile so that the opportunity for search is fleeting: Commonwealth v. Maione, 227 Pa. Superior Ct. 239 (1974).

Still further, under the rationale of the "stop and frisk" doctrine of Terry v. Ohio, 392 U. S. 1 (1968), an officer may stop a person for brief questioning and investigation, even if he has insufficient probable cause to make an arrest, where he has, nevertheless, observed specific instances of unusual and suspicious conduct by such person which may reasonably lead him to believe that criminal activity is afoot or that such person might be implicated in known criminal acts. As the Supreme Court observed in Adams v. Williams, 407 U. S. 143, 145-46 (1972):

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

See Commonwealth v. Hicks, 434 Pa. 153, 158 (1969); Commonwealth v. Pollard, 450 Pa. 138, 141-42 (1973); Commonwealth v. DeJesus, 226 Pa. Superior Ct. 79 (1973).

Applying these principles to the facts of the instant case, we believe that the physical items of evidence in question were legally and appropriately taken into possession by the police officers under all the surrounding and developing circumstances of the con-

frontation between the officers and the drivers of the two vehicles involved. Officer Thompson knew that a car with the unusual yellow and gold characteristics of the subject Cadillac had been stolen only minutes before from a location only a short distance away and from the direction in which the suspect vehicle was proceeding. He unquestionably, therefore, had probable cause to pursue, stop and apprehend the operator of the Cadillac. In the course of so doing, he became aware of additional circumstances which gave him not unreasonable grounds for at least suspicion that possibly the operator of the closely following Lincoln was also involved. Additionally, both he and Officer Hughes, of the Philadelphia Police Department (in whose bailwick these vehicles were then being operated) personally observed the driver of the Lincoln committing a violation of the summary provisions of section 1010 of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 PS §1010, which prohibit an operator from following more closely than is reasonable and proper.

Accordingly, when the vehicles all came to a stop at the Frankford Avenue intersection (and whether such stop was by reason of merely a red traffic signal, or because of Officer Thompson's forcing DiCicco to halt the Cadillac, is more or less beside the point), and when Thompson called back to Officer Hughes that the Cadillac had been stolen and to "cover" defendant in the Lincoln, it would seem apparent that Hughes then had just and reasonable grounds under the Terry "stop and frisk" doctrine for temporarily detaining defendant for further investigation, especially since Hughes would himself have had a sufficient independent basis for stopping defendant to give him a citation for the violation of The Vehicle Code. In view of the hour of the night and the serious nature of the

stolen car charges, moreover, it was not unreasonable for Hughes to order defendant from the car to place him in a safer location where he might more readily be observed.

Thus, even if it be conceded that the officers had no sufficient probable cause to arrest the within defendant without a warrant at their initial stop of the vehicles, they did have sufficient cause, at least temporarily, to detain and talk to defendant in investigation of his ostensibly suspicious actions in following so closely the stolen vehicle. It follows, therefore, that they were not unlawfully or improperly in the position in which they were when they observed the vise grip wrench and the open "tote" bag with the ring of car key blanks protruding in full view on the front seat of the Lincoln. This observation, coupled with Thompson's prior noting that the cylinder lock on the door of the Cadillac was missing, supplied the additional grounds which unquestionably provided, when considered with all the other circumstances, the probable cause which enabled the officers to make the warrantless further and more complete search of the vehicle and, on discovery of the further tools and equipment thereby disclosed, to permit the warrantless arrest of defendant as an apparent co-participant in the theft of the Cadillac. The search of defendant's person resulting in the finding of the two lock cylinders in his pocket was permissible as an incident of the arrest.

The situation in this case as it progressively unfolded was not unlike that presented in the recent case of Commonwealth v. Brown, 228 Pa. Superior Ct. 158 (1974). In that case, the police had information that defendant had been selling drugs at a particular location. When they arrived there, defendant was observed being driven away in an automobile which the police followed and stopped some distance away. When the car was stopped and the officers had identified them-

selves to the occupants, they saw defendant open the passenger door and drop to the ground two packets of what subsequently turned out to be illegal drugs. The officers then arrested defendant and the resulting body search disclosed other illegal contraband.

The Superior Court reversed the trial court's suppression of the evidence so discovered, holding, notwithstanding that the informer's tip did not provide adequate probable cause for defendant's arrest upon the initial stop of the car because of a failure of a sufficient showing of reliability of the informant, that, nevertheless, sufficient cause was present to justify the stop and brief detention of the vehicle for further investigation under Terry and Adams, supra. Accordingly, just as in the instant case, the officers had the right to be in the position in which they thereafter actually observed additional circumstances which then did provide probable cause for the arrest and seizure of evidence. The concluding sentence of Judge Jacobs' opinion in Brown, 228 Pa. Superior Ct. at 164, is equally apt in the present case:

"While probable cause was not present prior to the stop of the vehicle, the subsequent events, in plain view of the officer, established probable cause for the defendant's arrest."

Aside from the suppression question, defendant has no realistic or even arguable basis for his post-trial motions. In addition to the matters hereinabove discussed, it further appeared at trial that the ignition lock key which DiCicco was using to operate the stolen Cadillac was not only one made from a replacement blank but also fitted and operated one of the lock cylinders found in the within defendant Ferraro's pocket. Their joint complicity in the theft of the Cadillac was clearly demonstrated, and there was not one iota of evidence to the contrary.

## ORDER

And now, September 12, 1974, for the reasons stated in the foregoing opinion, defendant's respective motions in arrest of judgment and for a new trial are hereby severally denied and refused. Defendant is hereby directed to appear before the trial judge for sentence at a time fixed by the district attorney upon reasonable notice to the trial judge, defendant and counsel of record.