370 A.2d 1157

**COMMONWEALTH of Pennsylvania**

v.

**Harry MIMMS, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 29, 1976.

Decided Feb. 28, 1977.

Rehearing Denied March 28, 1977.

Renninger, Spear & Kupits, Burton Spear, Doylestown, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Two Philadelphia police officers stopped an automobile for the purpose of issuing a traffic summons. Upon approaching the automobile, Officer Kurtz ordered the driver, appellant Harry Mimms, to step out of the car. After Mimms had alighted from the vehicle, Officer Kurtz noticed a large bulge under Mimms' sports jacket. Fearful that the jacket might be covering a weapon, the police officer conducted a frisk of appellant's outer clothing. The frisk resulted in the discovery of a loaded .38 caliber revolver and five live rounds of ammunition. Based on this evidence appellant was indicted for carrying a concealed deadly weapon and for unlawfully carrying a firearm without a license. A motion to suppress was denied, and after a trial, at which the revolver was introduced into evidence, Mimms was convicted on both counts. The Superior Court affirmed the conviction,[1] and we granted allocatur. Because we conclude that appellant's revolver was seized in a manner which violated the Fourth Amendment to the Constitution of the United States, we reverse the Superior Court and remand the case for a new trial.[2]

1. *Commonwealth v. Mimms*, 232 Pa.Super. 486, 335 A.2d 516 (1975). The Superior Court affirmed the conviction by a four to three vote; the division, however, was occasioned by another issue not here considered.

2. Because we reverse the case on this basis, it is unnecessary for us to reach the other issues raised by appellant on this appeal. Those issues are as follows: (1) the Municipal Court of Philadelphia, not the court of common pleas, had subject matter jurisdiction over the offenses charged; (2) the trial court erred in allowing testimony from a defense witness that both he and appellant

■■ The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated. . . ." The broad mandate of the amendment serves to protect an individual's reasonable expectation of privacy from unjustifiable governmental intrusions. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 889 (1968); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975). The protection thus afforded is not limited to persons in the shelter of their homes, but extends as well to the occupants of a moving vehicle. *Commonwealth v. Murray, supra; Commonwealth v. Boyer*, 455 Pa. 283, 314 A.2d 317 (1974); *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973); *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973); *Commonwealth v. Dussell*, 439 Pa. 392, 266 A.2d 659 (1970). The question presented is whether the governmental intrusion which occurred in this case—an order to leave the automobile and a limited search for weapons—may be justified consistently with the standards of the Fourth Amendment.[3]

The Commonwealth does not seek to justify Officer Kurtz's frisk for weapons on the ground that the traffic violation for which appellant's automobile was stopped [4] supplied probable cause to search the occupants of the vehicle. We have previously held that such a violation

were Muslims; (3) the district attorney in his summation exceeded the bounds of permissible argument; (4) the trial judge erred when he expressed to the jury his opinion as to the credibility of witnesses.

3. The Fourth Amendment applies to the States through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

4. The automobile was being operated with an expired license tag. The maximum penalty which could have been imposed for this offense was a fine of $10. Act of April 29, 1959, P.L. 53, § 511, *as amended*, 75 P.S. § 511.

does not, indeed, supply justification. See *Commonwealth v. Dussell, supra.* Nor does the Commonwealth contend that the search was made incident to a lawful full-custody arrest based upon probable cause. See *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L. Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Rather the Commonwealth asserts that the frisk was initiated only after Officer Kurtz had reasonable grounds to believe that appellant was armed and dangerous and was limited in scope to a pat-down of appellant's outer clothing. As a consequence, the Commonwealth urges, the stop and frisk was justified under the pronouncements of the Supreme Court of the United States in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 829 (1968).[5]

In *Terry* the Supreme Court gave recognition to the fact that the exigencies of face-to-face street confrontations may require police response even when probable cause to search or to seize property or persons is lacking. See also, *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1922, 32 L.Ed.2d 612, 616 (1973). These exigencies may require a police officer to detain a person whom he suspects of criminal activity and to frisk the person whom he has detained when he has reasonable grounds to believe that the person is armed and dangerous. The Court in *Terry* acknowledged that action of this sort by the police may constitute governmental interference with

5. To be distinguished are cases wherein a search of a suspect's person is made incident to a full-custody arrest based upon probable cause. See *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (driver of automobile arrested by police officer having reason to believe that the vehicle was being driven after the operator's license to drive had been revoked); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) (Semble). These decisions make it clear that "the limitations placed by *Terry v. Ohio, supra,* on protective searches conducted in an investigatory stop situation based on less than probable cause are not to be carried over to searches made incident to lawful custodial arrests." *Gustafson v. Florida, supra,* at 264, 94 S.Ct. at 491. The Commonwealth in the case before us relies on no such arrests as occurred in *Robinson* and *Gustafson.*

an individual's reasonable expectation of privacy and that such intrusions are often made without warrants or probable cause. The Court held, nonetheless, that such "carefully limited searches" are reasonable within the meaning of the Fourth Amendment in certain narrow circumstances:

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." 392 U.S. at 30–31, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

The Court made it clear that "in justifying the particular intrusions the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant the intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. Accord *Commonwealth v. Murray, supra; Commonwealth v. Boyer, supra; Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973) [6]; *Commonwealth v. Dussell, supra; Commonwealth v. Berrios,* 437 Pa. 338,

---

**6.** The dissenting opinion of this writer in *Jeffries* did not disagree with the Court's statements concerning the law, but with the application of the law to the facts of that case. 454 Pa. at 328, 311 A.2d 914 (dissenting opinion of Pomeroy, J.).

263 A.2d 342 (1970). The question before us, then, is whether Officer Kurtz has been able to point to such "specific and articulable facts."

The precise point of our inquiry must be whether Officer Kurtz's action was justified at its inception. *Terry v. Ohio*, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed. 2d 905. Certainly the fact that a weapon was discovered as a result of the search cannot serve as its justification. See, *e. g.*, *Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917, 934 (1968). Even were we to assume that the observable bulge under Mimms' coat justified a limited search for weapons, our inquiry would still not be at an end. The initiation of Officer Kurtz's intrusive action was the order to appellant to get out of his car. If that order cannot be constitutionally justified, then the fruits of the resulting frisk were likewise unconstitutionally obtained.

In *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973) this Court held that the police had no right to order a passenger out of an automobile after the police had stopped it for going through a red light; although the infraction occurred in a "high crime" area, the police could point to no objective observable facts to support a suspicion that criminal activity was afoot or that the occupants of the vehicle posed a threat to police safety. Similarly in the instant case, Officer Kurtz could point to no such observable facts. He testified that he did not see the bulge under appellant's coat until after appellant had stepped out of the car, and that there was nothing unusual or suspicious about the behavior of Mimms or his passenger which led Kurtz to issue his order. Rather, the officer indicated that it is his practice to order *all* drivers out of their vehicles whenever he makes a stop for a traffic violation and that the order was issued to appellant solely because of this practice.

■ We are not unsympathetic to the plight of the police officer who must approach potentially dangerous people in the daily enforcement of our traffic laws. The Fourth Amendment, however, mandates that invasions of the personal liberties of the occupants of motor vehicles be justified by a reasonable appraisal of the objective facts of the given situation. "Anything less would invite intrusion upon constitutionally guaranteed rights based on nothing more substantial than inarticulable hunches." *Terry v. Ohio,* 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906. In the case at bar, the stop and frisk in question was not initiated on the basis of an objective appraisal of the given circumstance but rather on a policy of ordering all drivers stopped for traffic violations out of their vehicles. Such an indiscriminate procedure violates the Fourth Amendment and the fruits obtained as a result thereof may not properly be used at trial against the accused. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The order of the Superior Court is reversed and the case remanded for a new trial.

NIX, J., filed a concurring opinion in which O'BRIEN, J., joins.

JONES, C. J., dissents.

NIX, Justice, concurring.

While I believe that the judgment of sentence in this matter must be reversed and a new trial awarded, my reasons for reaching this result differ from the majority. I cannot agree that Officer Kurtz's direction to appellant that he alight from his vehicle was such an arbitrary and unreasonable invasion of appellant's liberty as to violate the fourth amendment.

The requirements of the fourth amendment applicable to the instant case were set forth most recently by the United States Supreme Court in *United States v. Brig-*

*noni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

"The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Terry v. Ohio*, 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person," *Terry v. Ohio, supra*, at 16, 88 S.Ct. [1868] at 1877, and the Fourth Amendment requires that the seizure be "reasonable." As with other categories of police action subject to Fourth Amendment constraints, *the reasonableness of such seizures depends on a balance between the public interest, and the individual's right to personal security free from arbitrary interference by law officers. Terry v. Ohio, supra*, at 20–21, 88 S. Ct. [1868] at 1879; *Camara v. Municipal Court*, 387 U.S. 523, 536–37, 87 S.Ct. 1727, 1734, 18 L.Ed.2d 930 (1967)." *Id.* at 878, 95 S.Ct. at 2578 (emphasis added).

The application of this balancing test to the instant facts yields the conclusion that Officer Kurtz's action was reasonable. The intrusion occasioned by requiring appellant to step out of the vehicle was minimal. Appellant had in fact already been "seized". He was properly detained by Officer Kurtz for a violation of the Motor Vehicle Code. Appellant's freedom of movement was thus lawfully restricted until the officer had finished his business. Requiring a motorist to leave his vehicle under these circumstances is in my view, of no constitutional moment.[1]

1. The majority's reliance on *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973), is tenuous at best. Our holding in that case was clearly limited to *passengers* occupying a vehicle. ("Further, as was previously noted, appellant was not the driver of the automobile." *Id.* at 142, 299 A.2d at 235.) The majority in the case at bar ignores this distinction, and thus completely

The de minimus nature of the intrusion is clearly outweighed by the public interest in insuring the safety of our law enforcement personnel.[2]

I would thus hold that when appellant alighted from the car, pursuant to the officer's instructions, the limited search for weapons was justified by the observable bulge under appellant's jacket. *See Terry v. Ohio, supra.*

I join my brethren, however, in remanding this matter for a new trial because I believe the trial judge erred in permitting the Assistant District Attorney to cross-examine a defense witness concerning the witness' and the appellant's religious affiliations.

overlooks the question left open in *Pollard* of whether an operator's expectation of privacy differs from that of an occupant of a vehicle detained for a traffic violation. *Cf. United States v. Johnson,* 463 F.2d 70 (10th Cir. 1972); *Carpenter v. Sigler,* 419 F. 2d 169 (8th Cir. 1969).

In *People v. Wolf,* 60 Ill. 230, 326 N.E.2d 766, *cert. denied,* 423 U.S. 946, 96 S.Ct. 361, 46 L.Ed.2d 280 (1975), the Supreme Court of Illinois upheld the introduction of evidence obtained by a state police officer when he opened the driver's door to inspect the serial number of a "suspicious" vehicle detained because its license plate was fastened on with wire. The court sustained the officer's action in opening the door as reasonable and not inconsistent with the fourth amendment on the ground that the intrusion was minimal. *See also United States v. Ware,* 457 F.2d 828 (7th Cir. 1972); *United States v. Self,* 410 F.2d 984 (10th Cir. 1969). In the case at bar, the vehicle was detained for having an expired license plate. Presumably, Officer Kurtz would have been justified in opening appellant's door to inspect the vehicle identification number. In my view, the difference, if any, in the "degree of intrusion" occasioned by this type of conduct and that instantly held invalid is constitutionally insignificant.

2. Risks incurred by officers required to approach parked vehicles were noted by the United States Supreme Court in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

Figures reported by the Federal Bureau of Investigation indicate that 125 policemen were murdered in 1971, with all but five of them having been killed by gunshot wounds. Federal Bureau of Investigation Law Enforcement Bulletin, February 1972, p. 33. According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, *Police Officer Shootings—A Tactical Evaluation,* 54 J.Crim.L.C. & P.S. (1963). *Id.* at 148–149 n. 3, 92 S.Ct. at 1924.

Clayton Morrison, a passenger in the vehicle at the time of appellant's arrest,[3] testified for the defense that he and not appellant had brought the revolver into the vehicle, and that it was found not on appellant, but under the car seat. On cross-examination, the Assistant District Attorney questioned the witness as to his and Morrison's religious affiliations as follows:

"Q.   Tell me, are you a good friend of Harry Mimms?

"A.   I am an acquaintance of him, I know him.

"Q.   You know him very well would you say?

"A.   Yes, sir.

"Q.   Are you both Muslims?

"A.   Sir?

"Objection: Sir, I move for withdrawal of a juror.

"THE COURT: Overruled.

"Q.   Are you both Muslims?

"A.   Yes, sir.

"Q.   In other words, when you say 'Muslims', followers of the Islam faith is that right?

"A.   Yes."

Appellant's religious affiliations were never mentioned during direct examination. The Commonwealth does not contend that the questions were relevant to any factual matter at issue during the trial,[4] but argues that the testimony was introduced to show the witness' relationship

3.  Prior to appellant's trial, Morrison had pled guilty to charges of violation of the Uniform Firearms Act and carrying a concealed deadly weapon.

4.  In *McKim v. Philadelphia Transportation Co.*, 364 Pa. 237, 72 A. 2d 122 (1950), this Court permitted questions concerning a litigant's religious affiliation where it was alleged that her injuries had prevented h⸱r from performing her duties as a minister of the Jehovah's Witnesses. The questions were thus permitted to obtain "substantive information", and not for the purpose of impeachment.

to the appellant and put his *credibility* in issue. However, our legislature has provided that:

"[n]o witness shall be questioned, in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or *credibility*." Act of April 23, 1909, P.L. 140, § 3, 28 P.S. § 313 (1958) (emphasis added).

We have stated that no verdict which may have been brought about or even influenced by a litigant's religious affiliations should be permitted in a court of justice. *O'Donnell v. Philadelphia Record Co.*, 356 Pa. 307, 346–47 n. 5, 51 A.2d 775, 793–94 n. 5, *cert. denied*, 332 U.S. 766, 68 S.Ct. 74, 92 L.Ed. 351 (1947). This is particularly so where, as here, the religious affiliation placed before the jury is that of a highly controversial and extensively publicized group like the Black Muslims. The potentially prejudicial impact of such testimony is obvious, and its use by the Commonwealth in its attempt to impeach Morrison was error, requiring a new trial.

Accordingly, I concur in the judgment of the Court granting appellant a new trial.

O'BRIEN, J., joins in this concurring opinion.