COMMONWEALTH of Pennsylvania

v.

**Luis RODRIGUEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted April 21, 1997.

Filed June 17, 1997.

---

Clinton L. Johnson, Chester, for appellant.

William R. Toal, III, Asst. Dist. Atty., Media, for Com., appellee.

Before CAVANAUGH, TAMILIA and OLSZEWSKI, JJ.

CAVANAUGH, Judge:

Luis Rodriguez appeals from the judgment of sentence of the Court of Common Pleas of Delaware County imposed following his convictions of possession of a controlled substance with intent to deliver, possession of drug paraphernalia and criminal conspiracy. We affirm.

On December 24, 1995, a criminal complaint was issued, charging appellant, Rodriguez, with the following: criminal conspiracy; resisting arrest or other law enforcement; knowingly or intentionally possessing a controlled substance; manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance; and possession of drug paraphernalia. The charges arose out of an incident which occurred when, on December 23, 1995, appellant was a front seat passenger in a vehicle stopped for a traffic violation and an open cardboard box containing several zip lock bags filled with marijuana was found on the front passenger floor.

A hearing was held on May 7, 1996 on appellant's motion to suppress the marijuana, and on May 29, 1996, said motion was denied. A jury trial was held on September 17 and 18, 1996,[1] and appellant was found guilty of possession of a controlled substance with intent to deliver, possession of drug paraphernalia and criminal conspiracy.[2] The trial court sentenced appellant on October 8, 1996 to a minimum of two years to a maximum of four years for possession of a controlled substance with intent to deliver; a minimum of six months to a maximum of twelve months for criminal conspiracy; and one year probation for possession of drug paraphernalia, with the sentences to run concurrently.

Rodriguez raises the following issues on appeal:

1. Whether the Trial Court erred in not granting the Appellant's Motion to Suppress Evidence where the police officer violated the Fourth Amendment of the U.S. Constitution, Article I, Section 8 of

---

1. Appellant sought to have his trial severed from the trial of the co-defendants; Arturo Camacho, Hector Rivera and Armon Rodriguez. However, this motion was denied after a hearing on September 16, 1996. The co-defendants elected to proceed non-jury and these trials were presented jointly with the jury trial of appellant. Two of the co-defendants (Hector Rivera and Armon Rodriguez) were acquitted by the trial court at the conclusion of the Commonwealth's case. The third co-defendant's case concluded when he rested without presenting any evidence. The trial court took that matter under advisement pending the conclusion of the jury trial. Camacho was later found guilty of criminal conspiracy and was sentenced on September 20, 1996 to twenty-three months incarceration in county prison. Camacho has not appealed his sentence.

2. The Commonwealth withdrew its charge of knowingly or intentionally possessing a controlled substance during the course of the trial. Additionally, appellant was acquitted of the charge of resisting arrest or other law enforcement.

the Pennsylvania Constitution and the law articulated by the Pennsylvania Supreme Court in *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973), when the officer seized the passengers in a motor vehicle stopped for a traffic violation only, ordered them out of the vehicle and subjected them to a pat-down search, thereby causing a box of marijuana in the vehicle to come into the view of the police officer, where the police officer possessed no individualized or particularized probable cause or reasonable suspicion to believe that the occupants of the vehicle were engaged in criminal activity and where the police officer had no safety concerns, fears or beliefs that the occupants of the vehicle possessed weapons or that the police officers on the scene were in any kind of danger.

2. Whether the Trial Court erred in not severing the trial of the Appellant, Luis Rodriguez, from his Co–Defendants, where he sought a jury trial and they sought non-jury trials.

3. Whether the Appellant was prejudiced by the Trial Court dismissing his Co–Defendants from the trial and defense counsel table at the close of the Commonwealth's case, only leaving Appellant at the defense table half way through the trial of all Defendants to face the jury.

The facts of this case leading up to appellant's arrest and conviction are as follows:

On December 23, 1995, at approximately 7:00 p.m., appellant was the front seat passenger in a vehicle driven by Arturo Camacho. The vehicle was stopped by Police Officer Peter Lunn after he observed it failing to stop at a red light. The officer was in the process of writing a warning when he noticed that the registration information provided by the driver, Camacho, did not correspond with the tags on the vehicle.[3] Officer Lunn received assistance from Officer Jason Mark and prepared to issue citations and have the car towed because of the improper registra-

tion. Officer Mark, on instruction from Officer Lunn, directed the two rear passengers to exit the vehicle and they complied. As appellant got out of the front passenger seat, he was given a quick pat-down for weapons and directed to walk towards Officer Lunn. Officer Mark then moved closer to look in the vehicle and saw a coffee maker box in plain view. The box was open and a clear plastic bag was bulging out of it containing what the officer recognized to be marijuana. As Officer Mark looked back towards Officer Lunn, appellant began to run away. Officer Mark gave chase along with other officers and appellant was apprehended approximately five to six minutes later.

Prior to trial, appellant filed a motion to suppress the marijuana evidence, claiming that it had been observed and seized only after appellant had been unlawfully required to exit the vehicle. Appellant raises a Fourth Amendment claim and also cites Article I, Section 8, of the Pennsylvania Constitution as his basis for arguing in favor of suppressing the evidence. The trial court's denial of appellant's motion for suppression is the first

■ Initially, we note our standard for reviewing a claim that the trial court erred in denying a motion to suppress is well settled:

[T]he appellate court's responsibility is to determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Hughes*, 521 Pa. 423, 438, 555 A.2d 1264, 1271 (1989). In making this determination, we will consider the evidence of the prosecution's witnesses and so much of the evidence of the defense as, read in the context of the record as a whole, remains uncontradicted. *Id.* 521 Pa. at 438, 555 A.2d at 1271–72 (quoting *Commonwealth v. Kichline*, 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976)).

*Commonwealth v. Brundidge*, 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993). "It is, how-

---

**3.** The registration produced showed that the car which was stopped, a gray Honda Accord, was registered to the driver, Camacho. However, the license tag displayed on that vehicle did not correspond with the registration information provided by Camacho. Upon inquiry, it was discovered that the tag displayed on the Honda belonged to a Hyundai which was registered to Camacho's brother.

ever, exclusively the province of the suppression court to determine the credibility of witnesses and the weight to be accorded their testimony." *Commonwealth v. Brinkley*, 423 Pa.Super. 289, 620 A.2d 1226 (1993) (citation omitted). A suppression court's findings of fact are binding upon an appellate court in its review and the ruling of the suppression court may be reversed only if the legal conclusions drawn from those facts are in error. *Commonwealth v. Whitney*, 511 Pa. 232, 239–40, 512 A.2d 1152, 1156 (1986) (citing *Commonwealth v. Cortez*, 507 Pa. 529, 532, 491 A.2d 111, 112 (1985)).

When a police officer forcibly stops a motor vehicle, this constitutes a seizure of a person and activates the protections of the Fourth Amendment of the U.S. Constitution. *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973). However, a forcible stop and seizure is not unreasonable under the Fourth Amendment where there is an outward sign that the vehicle or the operator are in violation of the Motor Vehicle Code or the officer has probable cause based on specific facts which indicate to him that either the vehicle or the driver are in violation of the code. *Commonwealth v. Swanger, supra.* In the case herein, the vehicle in which appellant was a passenger was stopped for a violation of the Motor Vehicle Code, permissible under 75 Pa.C.S.A. § 6308. *Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988).

Appellant does not argue that the initial stop was improper, but that the officer was not justified in ordering him out of the vehicle following the traffic violation. Since *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Fourth Amendment has consistently been held to permit the police to require the *driver* of a lawfully stopped vehicle to exit the vehicle without any additional probable cause or reasonable suspicion. The *Mimms'* decision was based upon the need to protect police officers from the serious and substantial dangers inherent in traffic stops and the relatively minor intrusion upon the privacy rights of the driver under the circumstances where the vehicle has been lawfully stopped. *Id.*

It is also well settled that the rationale of *Mimms* applies to ordering *passengers* in a lawfully stopped vehicle to exit that vehicle when the officer has an articulable and reasonable suspicion that criminal activity may be afoot. *See Commonwealth v. Baer*, 439 Pa.Super. 437, 654 A.2d 1058 (1994) (after a valid traffic stop, a police officer may order a driver or a passenger from a vehicle when the officer reasonably believes that criminal activity is afoot or fears for his safety); *Commonwealth v. Morris*, 422 Pa.Super. 343, 619 A.2d 709 (1992) (officer's actions in directing passenger to exit vehicle were justified after observing the passenger's furtive movements in stuffing a brown bag under the front seat of the vehicle); *Commonwealth v. Elliott, supra* (the rationale in *Mimms* applies to passengers in a lawfully stopped vehicle when the officer has an articulable basis to believe that criminal activity is afoot).

Officer Lunn testified at the suppression hearing that prior to asking Officer Mark to remove the occupants of the vehicle: "We had a brief conversation in my vehicle and were concerned just the fact that we had a number of individuals in a vehicle where tags didn't match, possibly just a little bit suspicious." The credibility of witnesses and the weight to be accorded to their testimony is the sole province of the suppression court. *Commonwealth v. Brinkley, supra.* Therefore, we are in agreement with the suppression court's finding that the officer in the *instant matter was proper in ordering the* appellant from the vehicle based on "a reasonable suspicion that the occupants of the vehicle were engaged in criminal activity ... after Officer Lunn discovered that the vehicle tags, on the car stopped for a traffic violation, belonged to another vehicle, and thus, the car may have been stolen."

However, even if we were to conclude that the evidence fails to support a finding of an articulable and reasonable suspicion that criminal activity was afoot, the officer was still acting lawfully in asking appellant to exit the vehicle. This court has recently determined that the effect of *Mimms* is to require that "police may request both drivers *and* their passengers* to alight from a lawfully

stopped car without reasonable suspicion that criminal activity is afoot." *Commonwealth v. Brown,* 439 Pa.Super. 516, 528, 654 A.2d 1096, 1102 (1995) (emphasis added).[4]

In discussing why an officer need not articulate a specific concern regarding his safety, this court stated that "[o]ur conclusion is grounded in the sound rationale of *Mimms,* which balanced the important interest in the safety of law enforcement officers against the *de minimus* intrusion to the occupants of the lawfully stopped car. We believe the Fourth Amendment is not violated by such a rule." *Id.* at 528, 654 A.2d at 1102. The court went on to hold that "in all cases involving lawful traffic stops, it is not unreasonable for an officer to request that the passenger in a lawfully stopped car exit the vehicle so that the safety of the officer is, if not insured, at least better protected." *Id.* at 527 n. 5, 654 A.2d at 1102 n. 5.

Additionally, the recent United States Supreme Court decision of *Maryland v. Wilson,* —— U.S. ——, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) explicitly extends the rule of *Mimms* to allow a police officer to require passengers as well as the driver of a lawfully stopped motor vehicle to exit the vehicle. Specifically, the United States Supreme Court stated:

> In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.

*Id.* at ——, 117 S.Ct. at 886.

In the instant matter, appellant concedes that there was a lawful traffic stop and that police ordered him out of the passenger's seat pending completion of that stop. Apply-

ing the Supreme Court's holding in *Maryland v. Wilson* and this court's holding in *Brown* to the instant case, it is clear that the actions of the officer in requiring appellant to exit the vehicle were lawful under the Fourth Amendment, even in the absence of a reasonable suspicion that criminal activity was afoot.

We find unpersuasive appellant's reliance upon *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973). In *Pollard,* appellant was a passenger in a car which was pulled over after failing to stop for a red light. Appellant was ordered from the car and when he complied, a white packet containing drugs fell from his hand. Appellant was placed under arrest and ultimately found guilty of possession of narcotics. The Pennsylvania Supreme Court in *Pollard* held that the seizure which occurred when appellant was directed to exit the vehicle was violative under the Fourth Amendment because the officer had no reasonable belief that criminal activity was afoot and that appellant was armed and dangerous. Therefore, the court reasoned that no lawful justification existed for the officer's actions.

However, *Pollard* was decided prior to *Mimms, Brown* and *Maryland v. Wilson.* Any question that existed regarding whether, under the Fourth Amendment, the police may lawfully require passengers to exit a lawfully stopped vehicle has been resolved in favor of permitting such a requirement. As this court noted in *Brown:*

> It is appellant's position that *Pollard* has not been effectively overruled by *Mimms II* because *Mimms II* involved the driver of a car and *Pollard* involved a passenger. We disagree; both *Pollard* and *Mimms I* were based on an erroneous interpretation of the parameters of the Fourth Amendment under the circumstances of a valid traffic stop. In deciding those cases, our supreme court did not have the benefit of the United States Supreme Court's reasoning espoused in *Mimms II.*[5]

---

4. We find no merit in appellant's suggestion that we are not bound by the decision in *Brown.* The *Brown* decision was adopted by the majority of the panel and therefore considered precedential. Thus, this court, sitting as a panel, is not empowered to overrule *Brown. Commonwealth v. Tay-*

*lor,* 437 Pa.Super. 102, 107, 649 A.2d 453, 455 (1994).

5. *Mimms I* refers to the Pennsylvania Supreme Court case of *Commonwealth v. Mimms,* 471 Pa. 546, 370 A.2d 1157 (1977) in which our Supreme

*Brown, supra* at 524, 654 A.2d at 1100. Accordingly, we reject as meritless appellant's federal constitutional challenge to the trial court's denial of his motion to suppress.

■ Appellant also argues that the officer's actions in removing him from the vehicle were violative of appellant's rights under Article I, Section 8 of the Pennsylvania Constitution.[6] While our state constitution has on occasion been held to afford greater protections than those provided by the federal constitution, appellant has failed to convince us that the facts underlying the present matter merit such greater protection.

Appellant first suggests that *Pollard, supra,* supports his claim under Article I, Section 8. This claim is meritless as there was no state constitutional basis presented in that case. To the contrary, the decision in *Pollard* was entirely the result of an application of Fourth Amendment principles as they had been developed to that date.

■ The other cases to which appellant cites are equally unconvincing as none contain facts analogous to the present matter; i.e., where the evidence sought to be suppressed was in plain view after the defendant/passenger was ordered to exit a vehicle stopped for a traffic violation. *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991) involved the suppression of evi-

dence obtained from defendant's home and another building pursuant to a defective search warrant; *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995) involved evidence discovered after an impermissible warrantless search of an automobile after defendant's arrest; *Commonwealth v. Shiflet,* 543 Pa. 164, 670 A.2d 128 (1995) involved a warrantless search of a defendant's pocketbook prior to her arrest, but after the driver and another passenger had been placed under arrest; and *Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721 (1994) involved evidence properly seized pursuant to a justified limited search for weapons when the officer had a reasonable and articulable suspicion that the suspect may have had access to a weapon.[7]

Our supreme court has made it clear that where a litigant seeks to depart from federal constitutional interpretation or precedent on the basis of a state constitutional principle, or seeks to extend the state constitution beyond that which has been decided with regard to a parallel provision of the federal constitution, he or she must satisfy the requirements set forth in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991).[8]

*Commonwealth v. Brown, supra* at 521, 654 A.2d at 1099.

---

Court held that ordering the driver out of a lawfully stopped vehicle without a reasonable suspicion that criminal activity is afoot is an impermissible seizure under the Fourth Amendment. *Mimms II* refers to the United States Supreme Court case of *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) in which the Supreme Court reversed the Pennsylvania Supreme Court's decision in *Mimms I.*

6. Appellant's entire argument for this proposition is as follows:

Accordingly, the Court erred in not granting Appellant's Motion to Suppress Evidence as the rule of law established by the Pennsylvania Supreme Court in *Commonwealth v. Pollard,* supra is just as valid today as it was twenty-three (23) years ago, because of the Pennsylvania Supreme Court's increasing emphasis on individual privacy interests inherent in Article I, Section 8 of the Pennsylvania Constitution. See *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995) (decided after *Brown* ); *Commonwealth v. Shiflet,* 543 Pa.

164, 670 A.2d 128 (1995) (decided after *Brown* ); *Commonwealth v. Morris,* 537 Pa. 417, 644 A.2d 721 (1994). Also see *State v. Wilson,* 106 Md.App. 24, 664 A.2d 1 (1995), decided after *Commonwealth v. Brown,* 439 Pa.Super. 516, 654 A.2d 1096 (1995).

7. The only other case cited in this portion of appellant's brief is *State v. Wilson,* 106 Md.App. 24, 664 A.2d 1 (1995). Not only is *Wilson* devoid of reference to Article I, Section 8 of the Pennsylvania Constitution, but this case was reversed by the United States Supreme Court decision rendered on February 19, 1997. *Maryland v. Wilson,* 117 S.Ct. 882 (1997).

8. *Edmunds* requires a litigant to brief and analyze the following four factors:
   1. the text of the constitutional provision,
   2. the history of the provision, including Pennsylvania case law,
   3. related case law from other states, and
   4. policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.
   *Edmunds, supra* at 390, 586 A.2d at 895.

Appellant fails to satisfy the requirements set forth in *Edmunds*. Instead, appellant chooses to rely on the above cited cases as precedential authority to extend the protection afforded by Article I, Section 8 beyond the federal interpretation of the Fourth Amendment. We find the cases cited by appellant to be unpersuasive in light of the facts before us.

As appellant does not cite to any state constitutional authority and otherwise fails to meet the requirements necessary to convince this court to consider and interpret Article I, Section 8 in a manner different than the United States Supreme Court's analysis of the Fourth Amendment, we dismiss this claim as meritless.

▮▮▮ Appellant next argues that the trial court erred by denying his motion to sever his trial from the trials of his co-defendants. Specifically, appellant contends that his defense was antagonistic to the defense of his co-defendants. The standard on this subject was enunciated in *Commonwealth v. Tolassi*, 489 Pa. 41, 49, 413 A.2d 1003, 1007 (1980), wherein the court determined:

> The decision whether to sever cases against co-defendants is one within the sound discretion of the trial court. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), cert. denied, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954); Pa. R.Crim.P. 219. Such a decision will be reversed only where there has been a manifest abuse of that discretion. *Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690 (1975) (opinion in support of affirmance); *Commonwealth v. Patrick*, 416 Pa. 437, 206 A.2d 295, appeal after remand 424 Pa. 380, 227 A.2d 849 (1967). And the critical factor in one [sic] analysis is the prejudice which inures to the accused as a result of the trial court's determination. *Commonwealth v. Peterson*, 453 Pa. 187, 194, 307 A.2d 264, 267 (1973); *Commonwealth v. Lasch, supra*, 464 Pa. at 584–85, 347 A.2d at 690.

▮▮ In the absence of manifest prejudice, our law does not mandate separate trials. To the contrary, the general policy of law is to conserve limited court resources, and to encourage joint trials in order to avoid the expense of duplicating evidence in a separate proceeding. *Commonwealth v. Patterson*, 519 Pa. 190, 197, 546 A.2d 596, 600 (1988).

Appellant is unable to point to any specific prejudice suffered by reason of the joint trial and we find none. We are in agreement with the trial court's finding that no prejudice resulted in its refusal to sever the trials.[9] As the trial court correctly noted:

> The Commonwealth presented the evidence against all the Defendants simultaneously, but told the Jury that they were only to decide the guilt or innocence of [appellant] Luis Rodriguez. None of the Defendants, except [appellant] Luis Rodriguez, testified on his own behalf or presented any witnesses in his defense, and although counsel for the co-Defendants cross-examined the Commonwealth's witnesses, [appellant] Luis Rodriguez was in no way prejudiced thereby. Separate trials would have resulted in a repetition of testimony and needless expenditure of time and money where every witness identified [appellant] Luis Rodriguez to be a front seat passenger of the car and the charges against all Defendants arose out of the same incident.

▮▮ Appellant's final argument is that the trial court erred in permitting the co-defendants to leave the courtroom prior to the conclusion of his jury trial. The trial court allowed the co-defendants to leave the courtroom prior to the conclusion of appellant's jury trial when two were acquitted of the charges against them and the other rested his case without presenting any evidence. Appellant claims that he was prejudiced because the jury was able to see that four co-defendants were being tried together as the trial began, but only appellant remained after the conclusion of the Commonwealth's case. Appellant suggests that the jury found him guilty by process of elimination due to the

---

9. Upon careful review of the notes of testimony from the trial, we find that the trial court suc- ceeded in insulating this proceeding from the co-defendants' non-jury proceedings.

trial court's decision to allow the co-defendants to leave the courtroom. We disagree.

Appellant was clearly not prejudiced by the dismissal of the co-defendants from the trial. The jury was told by the Commonwealth, in its opening statement, that they were to weigh the evidence only against appellant Rodriguez, so the jury never considered the co-defendants to be on trial. Additionally, the acquittal of the co-defendants was announced outside of the hearing of the jury.[10] Therefore, the jury could not reasonably infer anything from the absence of the co-defendants as the jury was aware that the cases against the co-defendants were being conducted by the trial court and were conducted, at least in part, outside of their view. We find no evidence that the jury rendered a verdict of guilty using a process of elimination or that appellant was otherwise prejudiced by the joint trials conducted in this matter. Therefore, this claim must be rejected as well.

The judgment of sentence is affirmed.

---

**10.** There is nothing in the record to suggest that the jury was aware that two of the co-defendants were acquitted at the conclusion of the Commonwealth's case, or that the third co-defendant had rested without presenting any evidence.