J-S10004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEFFREY LEWIS | : | |
| | : | |
| Appellant | : | No. 1613 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 23, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000423-2021

BEFORE:  PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED AUGUST 4, 2023**

Jeffrey Lewis appeals from the judgment of sentence imposed following his convictions for possession of a firearm prohibited, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia. Lewis challenges the denial of his motion to suppress the firearm recovered during a traffic stop. He additionally challenges the discretionary aspects of his sentence. We affirm.

The following facts are undisputed. Shortly after midnight on December 9, 2020, Philadelphia Police Officer Paul Moore executed a vehicle stop after witnessing Lewis's vehicle abruptly cross two lanes of traffic and make a right turn without signaling. Officer Moore pulled up behind the vehicle, which had parked shortly after making the turn. When Officer Moore approached the vehicle, he determined there were two individuals in the car—Lewis, who was

driving, and a female passenger. Officer Moore then observed a firearm on the floor at Lewis' feet. Officer Moore drew his own weapon, aiming it at Lewis, and removed the firearm from the vehicle while Lewis was still sitting inside. Lewis apologized and stated the passenger did not know about the gun. Lewis was then handcuffed and detained in the police cruiser. A National Crime Information Center ("NCIC") search revealed that Lewis was not licensed to carry a firearm, and at that time, Lewis was arrested.

Lewis filed a motion to suppress the firearm, arguing that neither his arrest nor the vehicle search was supported by probable cause. The trial court heard arguments on the motion to suppress immediately prior to the start of the bench trial. The trial court denied Lewis' motion to suppress.

After the bench trial, Lewis was convicted of the abovementioned firearms violations. The trial court deferred sentencing pending completion of a pre-sentence investigation report ("PSI"). On February 23, 2022, the trial court sentenced Lewis to concurrent terms of 10 to 20 years in prison for his convictions for possession of a firearm prohibited and firearms not to be carried without a license. For carrying firearms on public streets in Philadelphia, the trial court entered a finding of guilt without further penalty.

Lewis filed a timely post-sentence motion seeking, in part, reconsideration of his sentence. The trial court denied the post-sentence motion. This timely appeal followed.

In his first claim, Lewis argues the trial court erred by denying his motion to suppress the firearm. *See* Appellant's Brief at 9. Lewis does not contest the legality of the initial traffic stop. *See id.* at 13. Lewis also concedes that Officer Moore could have asked Lewis to exit the vehicle in order to secure the firearm. *See id.* at 18 n.6. However, Lewis claims that Officer Moore's observance of the firearm, without more, did not permit further investigation or a custodial detention.[1] *See id.* at 13-14, 18-19; *see also id.* at 18-19 n.6 (arguing the interaction was a custodial detention because Officer Moore pointed his service weapon at Lewis' head).

Our Court's standard of review for a suppression issue is deferential to the suppression court's finding of fact, but not its conclusions of law.

> In reviewing an order that denied a motion to suppress, an appellate court must determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression

---

[1] Lewis relies on **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019), in support of this argument. In **Hicks**, our Supreme Court held possession of a concealed firearm "alone is an insufficient basis for reasonable suspicion that criminal activity is afoot." **Hicks**, 208 A.3d at 945. However, the Court specifically declined the consider whether possession of a firearm can provide authorization to frisk a detainee following a lawful investigative detention. **See id.** at 934. Because Lewis was lawfully stopped for a Motor Vehicle Code violation, **Hicks** is not applicable to this case. **See Commonwealth v. Ross**, ___ A.3d ___, 2023 WL 4068547, *7 (Pa. Super. filed June 20, 2023) (concluding **Hicks** was not controlling where police did not initiate a detention because defendant was armed, and instead inquired about the presence of weapons in the course of a lawful vehicle stop).

court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Malloy*, 257 A.3d 142, 147 (Pa. Super. 2021) (citation, brackets and ellipses omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures. *See Commonwealth v. Thompson*, 289 A.3d 1104, 1107 (Pa. Super. 2023). Pennsylvania courts recognize "three levels of interaction between the police and citizens: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention." *Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023) (citation omitted).

Generally, a motor vehicle stop is considered an investigative detention. *See id.* "[A]n investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest." *Id.* (citation omitted). Pennsylvania courts have also clarified that an officer may order an individual's exit from a vehicle, ask questions to determine the individual's identity, and handcuff an individual without necessarily elevating the encounter to a custodial detention. *See Spence*, 290 A.3d at 314. In furtherance of the

officers' safety interest, police may also inquire about the presence of weapons. **See Malloy**, 257 A.3d at 150. However, police may not prolong a vehicle stop for an "inquiry exclusively aimed at collecting evidence of collateral wrongdoing." **Id.** at 153 (citing **Rodriguez v. United States**, 575 U.S. 348, 355 (2015)).

Here, Officer Moore's suppression hearing testimony confirms that after stopping Lewis's vehicle, he approached the drivers' side, and "within seconds [he] observed a firearm in between [Lewis's] feet." N.T. (Suppression), 10/19/21, at 10. Officer Moore drew his service weapon when he observed the firearm at Lewis's feet. **See id.** at 14. Officer Moore testified that he subsequently opened the car door to recover the firearm before placing Lewis in handcuffs and directing him to the back of the police cruiser. **See id.** at 10. After conducting an NCIC search, Officer Moore determined that Lewis was not licensed to carry a firearm. **See id.**

The suppression court highlighted the balance between the rights of citizens and the safety interests of police officers, and concluded Officer Moore did not violate Lewis's Fourth Amendment rights under these circumstances. **See** Trial Court Opinion, 8/10/22, at 11-12. The suppression court's findings are supported by the record, and we discern no error in its legal conclusions. **See id.**; **see also Ross**, ___ A.3d ___, 2023 WL 4068547, **17-18 (emphasizing the risks inherent in traffic stops and stating, "police officers may take reasonable precautions when the circumstances give rise to

- 5 -

legitimate safety concerns."), *19 (holding that officer's safety concern justified the proportional intrusion on defendant, *i.e.*, asking defendant whether he had a firearm); **Commonwealth v. Davis**, 287 A.3d 467, 469-70, 473 (Pa. Super. 2022) (during a vehicle stop, the officer could ask defendant whether he was licensed to carry a firearm after the officer observed a handgun in plain view while securing the illegally-parked vehicle). We therefore affirm on this basis with regard to Lewis's first claim.

In his second claim, Lewis contends the trial court imposed an unduly harsh sentence without consideration of mitigating factors. **See** Appellant's Brief at 21. Lewis acknowledges that the trial court imposed a sentence within the standard range of the sentencing guidelines but claims his prior record score is "highly misleading and vastly overstated his criminal history." **Id.**[2] He emphasized that his prior record score of REVOC was the result of crimes he committed on a single day, and within a several block radius, but which were charged separately. **See id.** at 24; **see also id.** (explaining that he committed the "spree" of robberies while he was young and intoxicated, while pretending to have a gun, and on one occasion he stole only a sandwich).

Lewis challenges the discretionary aspects of his sentence, from which there is no automatic right to appeal. **See Commonwealth v. Mrozik**, 213

---

[2] The applicable offense gravity score was 11, and Lewis had a prior record score of REVOC (repeat violent offender category). Therefore, the sentencing guidelines recommend a minimum sentence of 120 months, plus or minus 12 months for aggravating or mitigating factors. **See** 204 Pa. Code § 303.16(a).

A.3d 273, 275 (Pa. Super. 2019). Instead, an appellant must invoke this Court's jurisdiction. **See Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

> We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

> \* \* \*

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

**Moury**, 992 A.2d at 170 (quotation marks, brackets, and some citations omitted).

Here, Lewis preserved his claim in a post-sentence motion and filed a timely notice of appeal. Lewis also included a separate Rule 2119(f) statement in his appellate brief, asserting the trial court imposed an excessive sentence without consideration of all relevant sentencing factors, including mitigating factors. **See** Appellant's Brief at 20. We conclude Lewis has raised a substantial question for our review, and we proceed to the merits of his sentencing challenge. **See Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) ("This Court has [] held that an excessive

sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question." (citation omitted)). We review discretionary sentencing challenges with great deference to the sentencing court:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Bullock***, 170 A.3d 1109, 1123 (Pa. Super. 2017) (citations and quotation marks omitted).

In its opinion, the trial court set forth the relevant law and fully addressed Lewis's claim. ***See*** Trial Court Opinion, 8/10/22, at 3-10. Our review of the trial court's opinion and the transcript of the sentencing hearing in this matter confirms that the trial court was aware of all relevant sentencing factors and had the benefit of a PSI. ***See Moury***, 992 A.2d at 171 (explaining that when the trial court has the benefit of a PSI, "we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." (internal quotation marks and citation omitted)). We adopt the trial court's well-reasoned analysis of this claim as our own. ***See*** Trial Court Opinion, 8/10/22, at 3-10.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/04/2023

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA-PHILADELPHIA**
**TRIAL DIVISION – CRIMINAL SECTION**

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR-0000423-2021** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY LEWIS** | : | **1613 EDA 2022** |

**O P I N I O N**

Covington, J.

On December 9, 2020, Jeffrey Lewis (hereinafter "Appellant") was arrested and charged with Possession of Firearm Prohibited, Firearms Not to be Carried Without License, and Carrying Firearms in Public in Philadelphia.[1] On October 19, 2021, a Motion to Suppress was Denied and, following a non-jury trial, Appellant was convicted and found guilty of all charges. On February 23, 2022, the Court sentenced Appellant to a guideline term of 10 to 20 years of state incarceration. A timely appeal followed.

Instantly, the Appellant claims the following points of error:

1. The Trial Court abused its discretion in imposing a sentence of 10 to 20 years.

2. The Appellant's prior record was overstated by the sentencing guidelines, in that the Appellant's prior record consisted of several robberies which all occurred on the same say, within a span time of several hours, in which he possessed a simulated weapon and where he plead guilty to all of the offenses on the same date in a Rule 701 guilty plea consolidation.

3. The Trial Court committed an error of law by denying Appellant's Motion to Suppress because the police lacked sufficient grounds to detain Appellant at point of gun in the absence of probable cause that the Appellant committed a crime.

---

[1] 18 Pa. C.S.A. § 6105 §§A1, 18 Pa. C.S.A. § 6106 §§A1, 18 Pa. C.S.A. § 6108 (respectively).

Statement of Matters Complained of on Appeal Pursuant to R.A.P. 1925(b) (hereinafter "1925(b) Statement").

As discussed below, these claims are without merit. Accordingly, no relief is due.

## I. FACTUAL HISTORY

On December 9, 2020, Police Officer Paul Moore was on duty at approximately 12:10 A.M. when he observed a gray Kia Forte travelling southbound on the 2200 block of North Broad Street in Philadelphia. As the car approached Susquehanna Avenue, it abruptly crossed two lanes of traffic and made a right-hand turn onto Susquehanna Avenue failing to signal. The car stopped and parked on the 1400 block of West Susquehanna Avenue (N.T. 10/19/21, 7-9).

Lights and sirens were activated to investigate the vehicle. As Officer Moore approached the driver's side window of the Kia, he immediately saw a firearm on the floor of the vehicle at the Appellant's feet and drew his weapon. The officer opened the car door and recovered a loaded black Taurus. There were two occupants inside: Appellant and a female passenger. Appellant repeatedly apologized and stated several times that the passenger was unaware of the gun. Appellant was handcuffed and placed in the police cruiser. Officer Moore conducted an NCIC/PCIC check and determined Appellant was not licensed to carry a firearm. Appellant was subsequently arrested and transported for processing. (N.T. 10/19/21, 7-14).

2

## II.    PROCEDURAL HISTORY

Appellant proceeded by waiver trial on October 19, 2021, and was convicted of Possession of Firearm Prohibited, Firearms Not to be Carried Without License, and Carrying Firearms in Public in Philadelphia. On February 23, 2022, Appellant received a guideline sentence of 10 to 20 years of state custody. On March 2, 2022, Appellant filed a Reconsideration of Denial of Motion to Suppress and Reconsideration of Sentence, subsequently denied by the Court on May 31, 2022. This Appeal was timely filed on June 15, 2022, followed by the 1925(b) Statement on June 22, 2022.

## III.    DISCUSSION

### A.  Sentencing

#### 1.  Abuse of Discretion

Appellant asserts the Trial Court abused its discretion by imposing a sentence of 10 to 20 years. The scope of appellate review in sentencing is well-settled. Sentencing is vested within the sound discretion of the trial court, the abuse of which requires that the sentence either exceed statutory limits or be manifestly excessive. *Commonwealth v. Pennington*, 751 A.2d 212, 217 (Pa. Super. Ct. 2000) (citing *Commonwealth v. DuPont*, 730 A.2d 970, 986 (Pa. Super. Ct. 1999) (citation omitted)). The court in *Commonwealth v. Sheller* ruled it is not enough to allege an abuse of discretion rather,

> the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partially, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.
>
> When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but is not bound by the Sentencing

3

Guidelines. A court may depart from the guidelines if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. When a court chooses to depart from the guidelines however, it must demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines. Further, the court must provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines.

When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable. An appellate court must vacate and remand a case where it finds that the sentencing court sentenced outside of the sentencing guidelines and the sentence is unreasonable.

*Sheller*, 961 A.2d 187, 190 (Pa. Super. Ct. 2008) (citations omitted and formatting altered).

The inquiry into the reasonableness of a sentence is difficult to define. *Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007).

The discretion of the sentencing judge must be accorded great weight because she is in the best position to weigh various factors such as the nature of the crime, the defendant's character, and the defendant's displays of remorse, defiance, or indifference. *Commonwealth v. Minott*, 577 A.2d 928, 929 (Pa. Super. Ct. 1990). Given the broad range of discretion in sentencing matters, the trial court may sentence defendants outside the Sentencing Guidelines. *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002). Furthermore, the vulnerability of the victim is a sufficient reason to aggravate a sentence. *See Commonwealth v. Darden*, 531 A.2d 1144, 1148 (Pa. Super. Ct. 1987).

"A sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors..." *Walls*, 926 A.2d at 964. Additionally, a sentence may also be unreasonable if it was imposed "without express or implicit consideration" of the protection of the public, the rehabilitative needs of the defendant, and the gravity of the

4

particular offense at it relates to the impact on the life of the victim and the community as required by 42 Pa. C.S. § 9721(b). *Id.* The Superior Court has held that "where the trial court deviates substantially from the sentencing guideline range it is especially important that the court consider all factors relevant to the determination of a proper sentence. Such factors justifying an upward departure, however, may not include those already taken into account in the guidelines' calculations." *Commonwealth v. Messmer*, 863 A.2d 567, 573 (Pa. Super. Ct. 2004) (citations omitted). "[T]his requirement is satisfied then the judge states his reasons for the sentence on the record and in the defendant's presence." *Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. Ct. 2014) (citations omitted). [The Appellate] Court should not reweigh the proper sentencing factors considered by the trial court and impose [their] own judgment in the place of the trial court. *Commonwealth v. Macias*, 968 A.2d 771, 778 (Pa. Super. Ct. 2009).

Appellant's guidelines were comprised of a prior record score of "REVOC" and an offense gravity score of "11," producing a recommended minimum sentence of "120 to 240 months, plus or minus 12 months." N.T. 02/23/22, 5-6. The Court issued a sentence of 10 to 20 years state custody. This Court's sentence was neither illegal nor manifestly excessive as it was strictly within the recommended guidelines for each of the counts of which Appellant was convicted.

The sentencing function is vested in the sound discretion of the trial court, whose final judgment will not be disrupted by a higher court absent an abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007). To constitute an abuse of discretion, the sentence must exceed the statutory maximum. *Commonwealth v. Pickering,*

533 A.2d 735, 738 (Pa. Super. Ct. 1987). Finally, the sentence must be "so manifestly excessive as to constitute too severe a punishment." *Commonwealth v. De Luca*, 418 A.2d 669, 671 (Pa. Super. Ct. 1980).

In this matter, the Court considered the sentencing recommendations of both parties and carefully followed the sentencing guidelines. This Court offered sufficient, valid reasons for imposing its sentence. First, the Court considered the Appellant's reasons for having a gun but emphasized Appellant's knowledge of his prior conviction prohibiting his ability to carry a firearm. Next, the Court also acknowledged testimony and numerous letters received from family and friends emphasizing their love and support of Appellant. Finally, the Court afforded additional leniency to the Appellant for waiving his right to a jury trial. (N.T. 02/23/22, 31-34).

However, the Trial Court discussed the substantial weight of Appellant's Pre-Sentence Investigation Report (hereinafter "PSI") that noted his astonishing level of "disrespect for the criminal justice system and for authority," indicating that he does not "feel the Courts or probation will hold [him] accountable." N.T. 02/23/22, 33-34. The PSI proved telling and indicative of the Appellant's true nature and propensity for future offenses. Despite having a substantial drug and alcohol history, Appellant claimed he was sober of all drug use since age 35, which proved inaccurate: "while he was on state parole, he tested positive for Oxycodone (Percocet) on many occasions including while he was residing in a Community Corrections Center at Kintock Erie Group in 2016." *Id.* Appellant repeatedly refused all offers for drug treatment, claiming it was not needed and he did not have an addiction problem. *Id.*

6

It was further reported Appellant's adult record included 10 arrests, seven convictions, and five commitments. The current offenses directly violated Appellant's Special Probation for committing 12 gunpoint robberies, and he "was well aware of being prohibited from being in possession of any weapons or firearms as a condition of his state probation." The report indicated Appellant "did exceptionally poor on ... supervision and violated nearly every period of probation/parole imposed" and "violated his probations 23 times, but never had any of his sentences revoked." The PSI further noted the Appellant "has an exceptional history of violent offenses which should not be underestimated," emphasizing Appellant "believes he can do whatever he wants with impunity and without any repercussions. He has no sense of remorse for his actions. He is not amenable to community or County supervision." Finally, the PSI described Appellant as an "overly self-important and self-absorbed young man...indifferent to the plight of his victims...an institutionalized individual who cannot function outside of a controlled, secure environment ... [and] (his) risk of a future act of violence is very significant." (Presentence Investigation Report 12/7/21).

Based upon careful consideration of all information provided, the Court appropriately sentenced Appellant and the claim for relief is without merit.

## 2. Prior Record Score

Appellant avers the prior record score was overstated by the Sentencing Guidelines. This assertion is without merit.

A sentencing judge is not bound by the Sentencing Guidelines. *Commonwealth v. Edwards*, 194 A.3d 625 (Pa. Super. 2018). The Guidelines are merely advisory, *Id.*, and a court retains the ability and discretion to sentence below the mitigated range of the Sentencing Guidelines provided that it clearly explains its reasons for doing so on the record. *Commonwealth v. Hoch*, 936 A.2d 515 (Pa. Super. 2007). *See also Commonwealth v. Sheridan*, 502 A.2d 694 (Pa. Super. 1985) (Sentencing Guidelines were enacted to provide a guide to the courts; they do not preclude appropriate exercise of judicial discretion).

The Trial Court is afforded broad discretion in sentencing because the Court is in the best position to consider the proper penalty for the defendant based on an examination of the defendant's character, display or remorse, defiance or indifference, and the overall effect and nature of the crimes of which he or she was convicted. *Commonwealth v. Minott*, 577 A.2d 928, 929 (Pa. Super. Ct. 1990). While sentencing courts do possess broad discretion in sentencing, this discretion remains subject to appellate review. Inquiry into the reasonableness of a sentence is difficult to define and is based in part on the factors outlined in 18 Pa. C.S. §9781(d). *Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007). In reviewing the record, §9781(d), requires that the appellate court consider the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

A sentence imposed by the trial court may be found to be unreasonable or not guided by sound judgment after review of §9781(d)'s four statutory factors. *Id.* Moreover, the sentencing court must fashion a sentence that expressly or implicitly considers the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant pursuant to 42 Pa. C.S. §9721(b). *Id.* [The Appellate] Court should not reweigh the proper sentencing factors considered by the trial court and impose [their] own judgment in place of the in the place of the trial court. *Commonwealth v. Macias*, A.2d 773, 778 (Pa. Super. Ct. 2009).

The Appellant claims that his prior record score vastly overstated his criminal history. Prior to the sentencing hearing, the Trial Court thoroughly reviewed the Presentence Investigation Report, a supervision history summary provided by the parole office, along with defense counsel's mitigation packet containing 25-30 letters from family and community members regarding Appellant. N.T. 02/23/22, 4-5. Additionally, the Trial Court sympathetically contemplated the rehabilitative needs of Appellant by ordering drug screens as well as drug treatment as necessary. *Id.* at 35. This Court heavily considered the protection of the public in issuing her sentence and by reiterating to Appellant that he is not to possess a firearm as she stated "We do everything possible, but bullets have no names and people are getting shot who have nothing to do with anything happening in our communities. And I don't know that the answer for any of us is carrying a firearm." *Id.* at 31.

Moreover, the Trial Court stated the Appellant "has such a disrespect for the criminal justice system and for authority." The Appellant does not "feel the Courts or

9

probation will hold [him] accountable." The Court emphasized the Appellant has "violated probation over 23 times and [his] sentence has never been revoked." The Court concluded "[T]he record is what it is: twelve gunpoint robberies, though they occurred in one day, still effects as I indicated, twelve people in your past. Twelve crimes of twelve people, in addition to the rest of your prior history." N.T. 02/23/22, 33-34.

For the above reasons, Appellant's claim on this matter is without merit.

## B. Suppression

Appellant claims the Court erred by denying Appellant's Motion to Suppress. The standard of review for challenges to the denial of a suppression motion:

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, the appellate court may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the suppression court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. Ct. 2012) (citations omitted and formatting altered) *appeal denied*, 65 A.3d 413 (Pa. 2013) (parallel citation omitted).

On appeal of the denial of a motion to suppress, the Appellate Court is limited to determining "whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings."

10

*Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa. Super 2011) (quoting *Commonwealth v. Lohr*, 715 A.2d 459, 461 (Pa. Super. 1998)). If the record supports the factual findings of the trial court, the court reverses "only if there is an error in the legal conclusions drawn from those factual findings." *Id.* (citation omitted).

The Appellant claims that the Trial Court erred in denying Appellant's motion to suppress because the police lacked sufficient grounds to detain Appellant at point of gun in the absence of probable cause that the Appellant committed a crime. *See* Appellant's Pa. R.A.P. 1925(b) Statement.

*Commonwealth v. Salter*, provides that mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*" *Salter*, 121 A.3d 987, 992 (Pa. Super. 2015) (quoting *Commonwealth v. Feczko*, 10 A.3d 1285, 1290-91 (Pa. Super. 2010)) (emphasis added). However, in the present case, both parties stipulated to the legality of the traffic stop.

Officer Moore testified upon approach of Appellant's car, while outside of the driver's side window, he saw the firearm on the floor of the vehicle at the Appellant's feet. N.T. 10/19/22, 10. This observation falls directly under the plain view doctrine where: "(1) an officer views the object from a lawful vantage point; [and] (2) it is immediately apparent to him that the object is incriminating." *Commonwealth v. Luczki*, 212 A.3d 530, 547 (Pa. Super. 2019). Additionally, this situation creates exigent circumstances and condition of

safety for Officer Moore, leading him to draw his weapon on Appellant to remove him and the firearm from the vehicle. In *Commonwealth v. Clinton*, the Superior Court discusses the issue of officer safety and the balance between the rights of citizens and the protection of officers:

> [T]here is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly, it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.

*Clinton*, 905 A.2d 1026, 1030-31 (Pa. Super. Ct. 2006).

Moreover, the Superior Court has long held that police may order occupants out of the car during car stops even without suspicion that criminal activity is afoot. *Commonwealth v. Morris*, 644 A.2d 721 (1944); *Commonwealth v. Rodriguez*, 695 A.2d 864 (Pa. Super. 1997). And occupants may only be frisked, if there is reasonable suspicion that they are armed and dangerous. *Commonwealth v. Henderson*, 663 A.2d 728 (1995); *Commonwealth v. Benton*, 655 A.2d 1030 (1995). Clearly, in the instant matter, the officer's observation of a handgun in Appellant's immediate reach is reasonable suspicion he is armed and dangerous.

For the above reasons, Appellant's claim of insufficient probable cause is without merit.

12

## IV. CONCLUSION

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of the Appellant's request for relief. For the reasons set forth above, the judgment of the Trial Court should be affirmed.

BY THE COURT:

Roxanne E. Covington
August 9, 2022

13

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been served upon the following:

Defense Attorney:    Gregory J. Pagano, Esquire
1315 Walnut Street, 12th Floor
Philadelphia, PA 19107

Type of Service:    (X) First Class Mail    ( ) Certified Mail    ( ) Personal Service

District Attorney:    Lawrence J. Goode, Esquire
Assistant District Attorney
City of Philadelphia Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107

Type of Service:    (X) Inter-Departmental Mail  ( ) Certified Mail    ( ) Personal Service

Date: 8/9/2022

Morgan P. Caramenico
Law Student Intern to the Honorable Roxanne E. Covington
Juris Doctor Candidate – Widener University Delaware Law School '24

14