J-S35003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARRET MICHAEL MARTAK | : | |
| | : | |
| Appellant | : | No. 265 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 15, 2023
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0003640-2022

BEFORE:  PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.E.:  **FILED NOVEMBER 27, 2024**

Garret Michael Martak appeals from the judgment of sentence entered on November 15, 2023 in the Court of Common Pleas of Dauphin County, following his conviction of possession of a controlled substance,[1] possession of marijuana,[2] and use/possession of drug paraphernalia.[3] Martak challenges the trial court's order denying his motion to suppress physical evidence obtained through the execution of a search warrant on his vehicle following a traffic stop. We affirm.

---

[1] 35 Pa.C.S.A. § 780-113(a)(16).
[2] 35 Pa.C.S.A. § 780-113(a)(31).
[3] 35 Pa.C.S.A. § 780-113(a)(32).

The trial court made the following findings of fact in its opinion denying Martak's motion to suppress. We find that the record supports these findings and repeat them here:

On January 4, 2022, at around 9:40 a.m., Lt. Tim Roche of the Derry Township Police Department was in full uniform driving an unmarked police vehicle on Route 322 westbound when a vehicle passed him at a high rate of speed. Lt. Roche determined the car was going at least 65 MPH in a 55 MPH zone. Lt. Roche initiated a traffic stop and the vehicle pulled over on the shoulder of 322. Upon approaching the vehicle, he detected an odor of raw marijuana from inside the vehicle. After receiving [Martak's] license and registration and checking them, Lt. Roche again approached the car and asked [Martak] to exit the vehicle due to the amount of traffic on the highway and his inability to hear [Martak]. This was a continuation of the initial traffic stop. While completing the stop, after [Martak] had exited the vehicle, Lt. Roche asked [Martak] if he had a medical marijuana card and he replied that he did not. Lt. Roche asked for consent to search the vehicle and [Martak] declined the request.

Lt. Roche was wearing a body camera during the encounter, and various clips of the video were shown at trial. Lt. Roche explained that he would apply for a search warrant and offered to transport [Martak] to the Penn State Hershey Medical Center, where [Martak] had wanted to go. The vehicle was impounded and towed to the Derry Township police station. Lt. Roche applied for and received a search warrant. During the execution of the search warrant, Lt. Roche found suspected marijuana and paraphernalia; a white pill; and a white powdery substance. Analysis from the Pennsylvania State Police laboratory revealed the pill was fentanyl and the white powder was cocaine.

Trial Court Opinion, 8/8/2023, at 1-2 (record citations omitted).

On June 10, 2022, Martak was charged with two counts of possession of a controlled substance, one count of possession of marijuana, and two counts of use/possession of drug paraphernalia. Martak failed to appear at the preliminary hearing scheduled for August 30, 2022. On March 10, 2023,

Martak's counsel filed a Motion to Suppress, and on May 3, 2023, a suppression hearing was held in absentia. The trial court issued an order denying the Motion to Suppress on August 8, 2023. On November 15, 2023, a bench trial was held, and Martak was found guilty of all charges. Martak filed a Post-Sentence Motion which was denied on December 29, 2023.

On January 9, 2024, Martak filed a Notice of Appeal. Martak was ordered to comply with Pa.R.A.P. 1925(b) within 21 days. Martak filed his 1925(b) statement on March 19, 2024, and the trial court issued its opinion pursuant to Pa.R.A.P. 1925(a) on April 18, 2024.

On appeal, Martak maintains the trial court erred in denying his motion to suppress and raises the following issue for our review:

> Whether police unlawfully extended the traffic stop when the purpose of the initial traffic stop had concluded, and officers detained Mr. Martak to inquire as to whether he was a valid medical marijuana user?

Appellant's Brief, at 4.

Our standard of review in addressing a challenge to the denial of a motion to suppress is well-established:

> We are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the suppression court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court

turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the suppression court are subject to our plenary review.

*Commonwealth v. Boyd*, 296 A.3d 1270, 1274 (Pa. Super. 2023) (citation and brackets omitted). As this Court has long recognized, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted). Accordingly, "[t]he suppression court is free to believe all, some, or none of the evidence presented at the suppression hearing." *Id.* (citation omitted).

In its opinion denying Martak's motion to suppress, the trial court made the following legal conclusions: (1) the traffic stop was not extended in any way beyond what was necessary; (2) the odor of marijuana coupled with Martak's admission that he did not have a valid medical marijuana card equated to probable cause; and (3) Lt. Roche is a 25-year police veteran whose testimony was credible. *See* Trial Court Opinion, 8/8/2023, at 3, 5. Initially, we note the physical evidence at issue was seized pursuant to the execution of a search warrant. In this appeal, Martak does not challenge the validity of the search warrant. Additionally, Martak does not dispute the legality of the initial traffic stop, but rather maintains Lt. Roche unlawfully extended the traffic stop to further investigate without the requisite level of suspicion and detained him beyond the time necessary to enforce traffic laws

by asking him to exit the vehicle and inquiring about the odor of marijuana emanating from his vehicle. *See* Appellant's Brief, at 9-10.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019) (citation omitted). "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Id.* (citation omitted).

A seizure of the person occurs when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth v. Hicks*, 208 A.3d 916, 927 (Pa. 2019) (citation and footnote omitted). An investigative detention, which is a "temporary detention of a citizen," constitutes a seizure of the person within the meaning of the Fourth Amendment, and therefore, to maintain constitutional validity, must be supported by a "reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion." *Hicks*, 208 A.3d at 927-28 (citation omitted); *Commonwealth v. Adams*, 205 A.3d 1195, 1199 (Pa. 2019) (citations omitted). An unlawful investigative

detention "immediately violates the Fourth Amendment rights of the suspect, taints the evidence recovered thereby, and subjects that evidence to the exclusionary rule." *Hicks*, 208 A.3d at 927 (citation omitted). However, if the initial investigative detention were lawful, "nothing precludes a police officer from acting upon the fortuitous discovery of evidence suggesting a different crime than that initially suspected." *Id.*

Generally, the stop of a motor vehicle by a police officer is an investigative detention. *See Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa. Super. 2023). As our Court previously stated:

> A police officer has the authority to stop a motor vehicle for further investigation of a Vehicle Code violation that he or she observed. During the stop, the police may check vehicle registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or secure such other information as the officer may reasonably believe necessary to enforce the provisions of the Vehicle Code.

*Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa. 2006) (internal quotation marks, citations, and brackets omitted). Accordingly, because the authority for the seizure ends once the tasks incident to the traffic infraction and subsequent stop are, or reasonably should be, complete, a lawful traffic stop can become unlawful if the officer "measurably extend[s] the duration of the stop" by conducting inquiries unrelated to the justification for the stop, "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *Ross*, 297 A.3d at 792. "[N]ot all inquiries during a traffic stop qualify as ordinarily incident to

the stop's mission, as measures aimed at finding evidence of other crimes or safety precautions taken to facilitate detours from the mission do not pass constitutional muster." ***Ross***, 297 A.3d at 793 (citations omitted). Accordingly, the constitutionality of mission-specific questions and the determination of when tasks tied to the traffic stop are complete, or reasonably should be complete, are fact specific inquiries. ***See id.*** at 798.

If there is a lawful stop for a traffic violation and additional suspicion arises before the initial stop's purpose has been fulfilled, "detention may be permissible to investigate the new suspicions." ***Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa. Super. 2019) (citation omitted). "To demonstrate reasonable suspicion, the detaining officer must articulate something more than an inchoate and unparticularized suspicion or hunch." ***Commonwealth v. Cunningham***, 287 A.3d 1, 9 (Pa. Super. 2022) (internal quotation marks and citation omitted). Courts determine whether reasonable suspicion exists by examining "the totality of the circumstances through the eyes of a trained officer and not an ordinary citizen." ***Id.*** (citation omitted). However, it is well-established that an officer may compel passengers to exit the vehicle to effectuate safety during a lawful traffic stop, even if the officer lacks reasonable suspicion that criminal activity is afoot, because the safety of the officer conducting the traffic stop outweighs any additional intrusion imposed by asking the driver to exit the vehicle. ***See Pa. v. Mimms***, 434 U.S. 106,

111 (1977); ***Commonwealth v. Adams***, 205 A.3d 1195, 1199 (Pa. 2019);

***Commonwealth v. Rodriguez***, 695 A.2d 864, 868 (Pa. Super. 1997).

The trial court found that asking Martak to exit the vehicle was "entirely proper" in the context and course of the original traffic stop because Lt. Roche did not ask Martak to exit the vehicle due to the smell of marijuana, but rather, he asked him to exit due to safety concerns and his inability to hear Martak in the heavy traffic area. ***See*** 1925(a) Opinion, 4/15/2024, at 4. We agree.

Lt. Roche testified that upon returning to his vehicle with Martak's license, registration, and proof of insurance, he was aware of his exposure to the lane of travel in the heavy traffic area, which prompted him to request a second unit to respond to his location to assist with traffic control before making his second approach. ***See*** N.T. Suppression Hearing, 5/3/2023, at 7. Lt. Roche stated his reasons for asking Martak to exit his vehicle on his second approach as follows:

> Primarily for me, number one, I couldn't hear him. The amount of traffic—there's actually a bridge there, too. So the amount of echo of the traffic, I couldn't hear him. He spoke at a very little volume. It was difficult for me to hear him. Secondly, to be quite honest with you, I'm not real comfortable with standing on the side of State Route 322. There's a lot of traffic there. It's coming down a little bit of a hill. I didn't want to get struck by a car.

N.T. Suppression Hearing, 5/3/2023, at 7-8.

Based on the foregoing, the record supports the trial court's determination that asking Martak to exit his vehicle was appropriate. Regardless of whether there was reasonable suspicion of criminal activity

independent of the traffic violation that initiated the stop, Lt. Roche did not unlawfully extend the stop by asking Martak to exit his vehicle upon his second approach, where his safety, as the officer conducting the stop in a high traffic area, was of concern. *See Mimms*, 434 U.S. at 111; *Adams*, 205 A.3d at 1199; *Rodriguez*, 695 A.2d at 868. Further, Lt. Roche testified he could not hear what Martak was saying upon his second approach because of the noise of the traffic. Therefore, the record does not suggest Lt. Roche asked Martak to exit his vehicle to unlawfully extend the stop or subject him to a separate investigatory detention, but rather, he asked him to exit his vehicle to effectuate the initial, ongoing stop.

To support his contention that Lt. Roche unlawfully extended the stop without the requisite level of suspicion, Martak relies on *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021). Specifically, Martak maintains the officers seized his vehicle based solely upon the smell of marijuana, which failed to provide "either reasonable suspicion of unlawful marijuana use, or probable cause." Appellant's Brief, at 14-15. We disagree.

Pennsylvania's enactment of the Medical Marijuana Act[4] ("MMA") has impacted the role that indicia of marijuana use and possession play in our probable cause analysis. Prior to the MMA, the Controlled Substances Act[5] rendered possession of marijuana per se illegal. Accordingly, "[d]ue to the

_____

[4] 35 P.S. §§ 10231.101-10210231.2110.
[5] 35 P.S. § 780-113(a)(31).

illegal nature of marijuana and because of its distinct odor, the Superior Court often has employed the so-called plain-smell doctrine when called upon to discern whether police had probable cause to conduct a warrantless search of a vehicle." **Barr**, 266 A.3d at 40 (citations and internal quotation marks omitted). However, in **Barr**, our Supreme Court determined that, following the MMA's enactment, "the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." **Id.** at 41. Following **Barr**, this Court has recognized failing to produce a medical marijuana card is one factor an officer may consider when making a probable cause determination. **See Boyd**, 296 A.3d at 1278 (aroma of marijuana and Appellant's admission that he smokes marijuana and possesses no MMA card, coupled with presence of common drug masking agents and Appellant lighting a cigarette as officer approached vehicle, formed probable cause to believe illegally possessed marijuana was in the vehicle).

Here, Lt. Roche did not conduct a warrantless search of Martak's vehicle based solely upon the odor of marijuana, but, rather, he applied for and obtained a warrant prior to searching the vehicle. **See** N.T. Suppression Hearing, 5/3/2023, at 12. In the Affidavit for Probable Cause, Lt. Roche set forth the totality of the circumstances which led him to apply for the warrant to search Martak's vehicle. Specifically, Lt. Roche indicated his probable cause belief was based upon the following facts and circumstances: (1) he detected

the odor of marijuana emitting from within the vehicle; (2) Martak denied possessing a PA Medical Marijuana Card; (3) Martak indicated there was no marijuana in the vehicle and suggested the assertions were fabricated; and (4) Sgt. Greg Day and Ofc. Nick Kauffman arrived on the scene and indicated they also detected the odor of marijuana emitting from within the vehicle. *See* Affidavit of Probable Cause, 1/4/2022. Contrary to Martak's assertion, while the odor of marijuana was a factor considered, it was not the sole basis for impounding and subsequently searching his vehicle. Additionally, by denying possession of a medical marijuana card, Martak further confirmed, rather than dispelled, Lt. Roche's suspicion that he was engaged in criminal activity because, consequently, any marijuana in Martak's possession was not legally possessed pursuant to the MMA.

Finally, Martak challenges the trial court's credibility determination and maintains it erred in finding Lt. Roche's testimony credible because he identified an "overwhelming" smell of "raw" marijuana when only a small amount of raw marijuana was ultimately found in the vehicle. *See* Appellant's Brief, at 10, 15. However, the trial court determined, as a 25-year veteran police officer, Lt. Roche's testimony was credible, and any suggestion otherwise is "entirely meritless." Trial Court Opinion, 8/8/2023, at 5. The trial court further addressed Martak's credibility challenge as follows:

> [Lt. Roche] testified that he smelled raw marijuana, and lo and behold, raw marijuana was discovered during the actual search. Incredibly, [Martak] somehow contends that makes his testimony less believable. The officer did not state he smelled burnt

- 11 -

marijuana (which also was found) but stated exactly what he observed. To attack his credibility and suggest he is lying is ridiculous.

Trial Court Opinion, 8/8/2023, at 5. Because it is within the suppression court's "sole province as factfinder to pass on the credibility of witnesses," we defer to the court's judgment on this issue. **See Elmobdy** 823 A.2d at 183.

We agree with the trial court's conclusion that Lt. Roche did not unlawfully extend the traffic stop by asking Martak to exit the vehicle upon his second approach. Further, under the totality of the circumstances, Lt. Roche had reasonable suspicion to believe Martak was engaged in independent criminal activity, separate from the traffic violation, based upon the odor of marijuana emanating from Martak's vehicle, Martak denying the presence of marijuana in the vehicle, and Martak confirming he did not have a medical marijuana card. Accordingly, we conclude the trial court did not err in denying Martak's motion to suppress.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/27/2024